HEDGES, BATTERTON & COMPANY, Appellants, v. JOHN
G. WEAR, Respondent.

St. Louis Court of Appeals, January 17, 1888.

1. PERSONAL PROPERTY — CO-OWNERS — RIGHTS IN EQUITY.—Several
persons who acquire fractional interests in personal property, do
not thereby become partners, nor, without incorporation, will they
constitute a joint-stock association.   One or more of such co-owners
has no right to inspect the books kept by another, and can claim
nothing more than a division of the property under Revised Statutes,
section 3398, *et seq.*, and possibly the appointment of a receiver and
an injunction to restrain incumbering or wasting, with an account-
ing for the value of the use of the property. A bill in equity which
asks for an injunction restraining the further prosecution, and for
the winding up, of a business in connection with the property,
for a dissolution of the association, a sale of its property, and an
equitable distribution of its proceeds, is properly dismissed.

2. EQUITY—OPPRESSIVE PROCEEDING.—Where it appears that a tem-
porary injunction was obtained, and that the suit is prosecuted
without equity, and for purposes of oppression, that the property
in litigation has been destroyed by fire, and that the defendant does
not ask that the cause be retained for an accounting, it is not error
to dissolve the injunction and dismiss the bill.

APPEAL from the St. Louis Circuit Court, HON.
DANIEL, DILLON, Judge.

*Affirmed.*

GEO. H. BENTON and FORD & PAYNE, for the
appellants :   The court erred in dismissing plaintiffs'·
bill because the answer admits plaintiffs' cause of action,
and asks for an accounting and settlement of the assets
of the stock company or partnership.   Rev. Stat., sec.
3398 ; Bispham on Equity (2 Ed.) sec. 509 ; *Kennedy v.
Kennedy,* 3 Dana, 239 ; *Williamson v. Wilson,* 1 Bland,
418 ; *Berry v. Cross,* 3 Sandf. Ch. 1 ; *Holden v.
McMackin,* 1 Pars. Eq. Cas. 270 ; *Miller v. Jones,* 39
Ill. 54 ; *Maynard v. Railey,* 2 Nev. 313 ; *Shulte v.*

*Hoffman*, 18 Tex. 678; *Coudrey v. Gilliam*, 60 Mo. 97. The court erred in permitting the defendant, in his evidence, to explain what he intended to convey by the chattel mortgages executed by him and introduced in evidence by plaintiffs, and the court also erred in permitting the defendant to contradict the admissions in his answer. The court erred in dismissing plaintiffs' bill and entering judgment for the defendant, on the ground that property rights fairly obtained by purchase for a valuable consideration were not entitled to protection in equity because of the improper intention or purpose which actuated plaintiffs to acquire those rights. The maxim, "he who comes into equity must do so with clean hands," was improperly applied in this case. Pomeroy's Eq. Jur., sec. 399; *Lewis' Appeal*, 67 Pa. St. 166; *Meyer v. Yesser*, 32 Ind. 294; *Willard v. Taylor*, 8 Wall. 557; *Johns v. Norris*, 7 C. C. Green, 102; *Curts v. Leavitt*, 15 N. Y. 9; *Osborne v. Williams*, 18 Ves. 379; *Cassidy v. Metcalf*, 1 Mo. App. 593, 601.

ALEXANDER MARTIN, for the respondent: The bill is drawn upon the theory that the association was a joint-stock company. The characteristics of such a company permit a transfer of interest without working a dissolution. Parson's Part. [1 Ed.] 545. But we have no such companies in this state. It follows, therefore, that the association was a partnership. An assignment of interests to plaintiffs worked a dissolution of the partnership. The property acquired by the partnership belonged to it and is subject to its liabilities. *Phelps v. McNealy*, 66 Mo. 554. A bill to ascertain and enforce the liabilities resting upon this property cannot be entertained against only one of the original partners. They are all necessary parties to an accounting. Story's Eq. 167; *Scott v. Caruth*, 50 Mo. 120. At common law a tenant in common could not sue for partition of a chattel. *Blood v. Bland*, 110 Mass. 54; *Cridgell v. Mead*, 8 Mo. 53. Under the act of 1879 it is true that such action can be maintained. 1 Rev. Stat. 1879, p. 579. But plaintiffs.

and defendant are not mere tenants in common. They are owners of property originally belonging to the partnership. Equity cannot grant the relief because the necessary parties to the accounting are not in court.

THOMPSON, J., delivered the opinion of the court.

This is a suit in equity. The petition alleges in substance that a joint-stock company was formed for the purpose of purchasing certain printing material and the establishing of a newspaper at Poplar Bluff, Missouri, called the *Renovator ;* that the capital stock of the company was divided into nine shares ; that such subsequent transfers of shares were made that the plaintiffs became the owners of four of the shares, and the defendant, originally the owner of one and one-half shares, purchased the other three and one-half shares for the purpose of defrauding the plaintiffs out of their just rights, title, and interest in the property and enterprise ; that he openly denies and refuses to recognize their rights, interest, and title, and refuses to permit them to have any voice or action in the management or control of the property, but has designedly and fraudulently appropriated the same to his sole and exclusive use ; and that he has refused to permit them to examine the books of account and the subscription list of the company, etc.

The petition prayed for a temporary injunction, commanding and requiring the defendant to cease the publication and management of said newspaper ; for the appointment of a receiver to take charge of said property pending the litigation ; for a dissolution of the said joint-stock company, a sale of its property, and an equitable distribution of the proceeds thereof, and for general relief.

Upon this petition an interlocutory decree was entered, granting an injunction restraining the defendant from the further publication of the said newspaper, from the further use of the said printing materials, and from the collection of any bills due the said news-

paper ; appointing a receiver to take charge of said materials pending said suit, and requiring the defendant to turn over the materials to such receiver.

Some time afterwards the defendant filed an answer, which consisted, first, of a general denial of all matters not subsequently admitted ; and which then charged that the object of the plaintiffs in bringing this suit was the suppression of the newspaper called the *Renovator*, which was the rival of a newspaper owned by the plaintiffs, called the *Citizen*, published also at Poplar Bluff ; admitted that, at the date of the institution of the suit, the defendant was the owner of five-ninths of the property described in the petition and that plaintiffs controlled the other four-ninths ; recited the proceedings by which the continuance of the business in his hands was enjoined, and the property taken out of his hands by the court's receiver ; alleged that, subsequently, the property, while in the hands of the receiver, was destroyed by fire and became a total loss ; set up that he furnished all the labor and paid all the expenses of running the paper ; claimed damages for the destruction of the business by the injunction ; stated certain conclusions of law as to the manner in which the damages should be apportioned between him and the plaintiffs ; and wound up by praying that the injunction be dissolved, that an account be taken between the plaintiffs and the defendant on the basis of their having a four-ninths and he a five-ninths interest in the property and business, and that the damages which have accrued from the destruction of the property and business, in consequence of the plaintiffs' suit, be ascertained, and then apportioned on the same basis, and for general relief.

Afterwards there was a change of venue to the circuit court of the city of St. Louis, and upon a final hearing, that court dissolved the injunction and dismissed the bill, from which decree the plaintiffs prosecute this appeal.

The substantial facts are not at all in dispute. It appears that, on the first day of March, 1884, the defendant

and six others entered into the following agreement: "We the undersigned, for the purpose of forming a joint-stock printing company, hereby subscribe the amount set opposite our names for the purpose of buying the press, materials, and all racks, stands, and stones, paper-cutter, mailer, job-press, and all things used in connection with the printing-office, known as the *Golden Era*, at McLanesboro, Illinois, that being a part of the object of the organization, which amounts subscribed by each shall by them be paid by the first day of March, 1884.

| | |
|---|---|
| "John G. Wear | $150 00 |
| Henry Turner | 100 00 |
| G. A. Standard | 100 00 |
| H. E. Johnson | 100 00 |
| Chas. Campbell | 300 00 |
| Josiah Harper | 100 00 |
| R. F. Scott | 50 00 " |

It appears that, in pursuance of this agreement, the printing-press and materials therein described, were purchased, and the newspaper, called the *Renovator*, established at Poplar Bluff, with Campbell as editor. It would seem that substantially all the amounts subscribed by each of the undertakers were paid in, the money being paid to Campbell, who managed the purchase. No further proceedings looking to the formation of a joint-stock company were ever undertaken; no articles of association were ever drawn up; no certificates of shares were ever issued; nor, so far as appears, was any distinct parol agreement of partnership ever entered into.

No sooner had the newspaper been established, than a sharp rivalry sprang up between it and the *Citizen*, which was being published by the plaintiffs at Poplar Bluff. The evidence leaves no room for doubt that the plaintiffs laid plans to get possession of a majority of the shares of the new paper, not for the purpose of coöperating in the business as partners, but for the purpose of suppressing and destroying it as a business rival. To this end they, very soon after the establishment of the new enterprise, succeeded in buying out

the one share of Turner. Indeed, it seems that the money with which Turner paid up his original subscription was furnished by them. As soon as the other adventurers learned of the transfer of Turner's share to the plaintiffs, they became alarmed, and met together and agreed that none of them would transfer his interest to the plaintiffs. This agreement did not restrain Campbell for any great length of time ; for, on the twentieth of March, he sold out his interest to the plaintiffs by the following instrument of writing :

"For and in consideration of three hundred dollars, the receipt of which is hereby acknowledged, I have this day sold to Hedges, Batterton & Company, my undivided one-third interest in the newspaper known as the *Poplar Bluff Renovator*, including one Washington handpress (eight column), one plow paper-cutter nearly new, one Cincinnati Wells job printing-press, about eighteen by twenty-four inches, one A. N. Kellogg jobber, small, one Mustang mailer, between four hundred and five hundred pounds brevier, about two hundred pounds long primer, about seventy-five pounds agate, about sixty fonts job type, metal and wood, about ten or twelve galleys, three imposing stones, half-dozen composing sticks, one cabinet mated furniture, two sets column rules for five column quarto and eight column folio, one pair eight column chases, and all stands, racks, and other material belonging to said office, of whatsoever nature, belonging to said *Renovator* office, and now located on west side square, Poplar Bluff, Missouri. And furthermore I do hereby guarantee that I own, free from all incumbrances, the three-ninths interest here conveyed, and guarantee the same to be free from incumbrance whatsoever. In witness whereof I hereunto set my hand and seal, this twentieth day of March, 1884.

"Charles Campbell."

The evidence also tends to show that it was a part of Campbell's undertaking with the plaintiffs that he would procure for them the share of Johnson, thus giving them five shares and the control of the new enterprise. This

movement was, it seems, checkmated by the defendant, who succeeded in getting control of the other five shares. As soon as Parsons sold out his shares to the plaintiffs he communicated this fact to his associates, vacated the office of editor, and Standard was for the time installed in his stead. Wear appears to have bought out Harper for three hundred dollars, securing him by a chattel mortgage on the property. He then appears to have bought out Standard for three hundred dollars, also securing him by a chattel mortgage on the property, which was subject to Harper's mortgage. These mortgages did not purport to convey the defendant's interest in the property, but purported to convey the entire property. It should be stated, however, that both Johnson and Harper knew what the defendant's interest in the property was. Nevertheless, the circumstances mentioned are, perhaps, pertinent, as tending to show the *animus* with which the defendant dealt with the property.

When the plaintiffs had thus acquired a four-ninths interest in the property, and had discovered that they could not get any further interest in it, one of them went to the defendant and informed him that the plaintiffs had an interest in the property; that they would like to know what the concern was doing—would like to look at the books. The defendant, according to the testimony of one of the plaintiffs, refused not only to show them the books, but to recognize that they had any interest in the property.

According to his own testimony, he merely refused to admit them to the *status* of partners in the affairs of the paper, and refused to show them the books, but did not deny their joint ownership of the material. Thereupon they brought the present action. It should also be stated that the evidence shows that, as alleged in the answer, while the materials were in the hands of the receiver appointed by the court, a fire broke out in the town of Poplar Bluff, destroying a portion of the town, and entirely consuming these materials.

This court is of the opinion that the circuit court rightly dissolved the injunction and dismissed the bill. This injunction, so far as it restrained the defendant from continuing the publication of the newspaper called the *Renovator*, was improvidently granted. No joint-stock company had ever been formed among the co-adventurers who bought the printing materials in question and established the newspaper called the *Renovator*. Joint-stock companies, except such as are incorporated under our acts of incorporation, are not known to our laws. Whether it would be competent, in the state of our law, for a number of adventurers to form a company, to issue shares, and to provide that such shares might be transferred as in the case of shares of a joint-stock corporation, without working a dissolution of the partnership, it is not necessary for us to decide. It is sufficient, for the purposes of the present case, to say that no such an agreement was consummated among these co-adventurers. It is even doubtful whether what they did amounted, as among themselves, to a partnership, or whether it did not leave them merely the coöwners of certain personal property, which they turned over by common consent to their co-adventurer, Campbell, to be used in a certain way. The most that can be said in favor of the plaintiffs in any view is, that they were joint owners with the defendant of certain printing materials ; for it is elementary law that a man cannot be made the partner of another man without the latter's consent. While a partner, so far as he is a joint owner of partnership property, may sometimes transfer his undivided interest in the property to another, subject to the partnership debts, yet he cannot do it so as to substitute that other as a partner in his place without the consent of his copartners; nor can he do it so as to conclude the rights of his copartners contrary to the partnership agreement. A general partnership, from its very nature, implies mutual trust and confidence among the partners. They are agents for the partnership and for each other, and each, for the purpose of the partnership, is seized of an

entire ownership in the partnership property and possesses a complete *jus disponendi* in respect of it. It is not a several ownership, but it is a joint ownership of a peculiar character, involving a joint agency, a joint confidence, and a joint trust. Neither of the copartners can transfer his interest to another, so as to substitute that other in his place, without the consent of his copartners. The plaintiffs, then, did not become the partners of this defendant by purchasing the interests of Turner and Campbell. They had no more right to inspect his books at the time when they demanded of him that right, than he had to inspect theirs. The most that can be said in favor of their rights is, that they became joint owners with Wear of the printing materials, and were entitled to have them divided, or sold, if need be, for partition, under the statute (Rev. Stat., sec. 3398, *et seq.*), and possibly to a receiver *pendente lite*, and an injunction to restrain the incumbering or wasting of the property. This was the extent of their right. They had no such interest as entitled them to invoke the aid of a court of equity to lay hold of the business, and enjoin its further prosecution, and proceed to wind it up. There was not a particle of equity in the kind of manipulation and wrecking which was undertaken by the plaintiffs in this case. It would be a reproach to our judicial administration if our courts should lend their equity powers to the aid of such proceedings. As joint owners of the materials, they may, as already suggested, have been entitled to some relief in equity to restrain its waste, or to have an accounting for their share of the value of its use ; but the case made by the evidence would not justify the retention of the bill for the purpose of an account merely, especially as defendant, who is the main sufferer, does not complain of its dismissal. It is conceded that the property itself is destroyed, and, as there is no equity in plaintiff's case, the action of the court in dissolving the injunction and dismissing the bill was proper.

The judgment of the circuit court will be affirmed. It is so ordered. All the judges concur.